**WALLING, Adm'r of Wage and Hour Division, U. S. Dept. of Labor, v. YOUNGERMAN–REYNOLDS HARDWOOD CO., Inc.**

**No. 10974.**

Circuit Court of Appeals, Fifth Circuit.

Nov. 10, 1944.

**Rehearing Denied Dec. 26, 1944.**

Archibald Cox, Associate Sol., Wage and Hour Div., U. S. Dept. of Labor, and Bessie Margolin, Asst. Sol., U. S. Dept. of Labor, both of Washington, D. C., and Amzy B. Steed, Acting Regional Atty., Wage and Hour Div., and Jack H. McGuire, Associate Atty., Wage and Hour Div., both of Birmingham, Ala., for appellant.

Fred S. Ball, Jr., of Montgomery, Ala., for appellee.

Before SIBLEY, McCORD, and LEE, Circuit Judges.

McCORD, Circuit Judge.

The Administrator of the Wage and Hour Division, U. S. Department of Labor, sought under Section 17 of the Fair Labor Standards Act, 29 U.S.C.A. § 217, to restrain by injunction the Youngerman-Reynolds Hardwood Company, Inc., from alleged violations of the overtime and record-keeping provisions of the Act. Fair Labor Standards Act of 1938, c. 676, 52 Stat. 1060; 29 U.S.C.A. § 201 et seq.

Upon a hearing the court below declined to issue an injunction and dismissed the complaint. The Administrator appeals.

The facts are not in dispute: Youngerman-Reynolds Co., Inc., a Tennessee corporation, was engaged at Samson, Alabama, in the manufacture of lumber for shipment in interstate commerce. There is no complaint as to the wages and hours of all employees of the lumber manufacturing plant save the laborers known as "stackers." In the manufacture of the lumber and after it came from the mill it was moved out onto the yard by laborers working by the hour and there turned over to stackers whose duty it was to stack and rick the lumber as they were directed. These stackers were paid by the piece, 70¢ per thousand feet where the lumber was ricked, and 80¢ per thousand where it was stacked. They had no certain hours in which to work, and commenced and quit as they desired; they generally worked in pairs and were not required by the defendant to keep hours. They worked overtime at certain periods, but overtime work did not occur often; they would work for weeks and even months when there was no overtime work. The custom in the lumber industry where these laborers worked had always been to pay stackers on a piece rate basis. Stackers are common laborers and they nearly always make double the wages of other common laborers working on an hourly basis. Some of the crews would go to work very early in the morning when it was cool, and then lay off in the heat of the day and return to work in the cool of the afternoon; they knocked off from work when it would rain, and generally worked when they pleased; the nature of their work was such that they worked practically without supervision. They preferred to work on a piece rate basis, and objected to working by the hour. In the year 1940 an inspector informed the defendant that his piece rate pay was all right; later, in 1941, a second inspection was made and again the defendant was told that his piece rate basis was satisfactory; a third inspection in the fall of 1942 was made and then, for the first time, the defendant was told that his piece rate basis of paying the stackers without extra pay for overtime hours was a violation of the law. Thereupon, the defendant advanced wages to the stackers and held the payroll in suspense until the defendant could find out what its duties were; and the evidence is without dispute that this was done in good faith and with a desire to obey the law. In all instances where overtime was worked, the amount paid exceeded the statutory minimum for time and overtime.

The complaint as filed charged that the defendant had violated the provisions of the Act in that it had shipped lumber produced by certain suppliers in violation of the Act, but the plaintiff in open court abandoned this claim. Furthermore, on the trial the issue was confined by the plaintiff to employees only engaged in stacking lumber. It was not charged that defendant failed to keep adequate records with reference to its employees.

On the day before the trial a new contract had been entered into between the defendant and the stackers, which provided for time and overtime, with a guarantee of additional pay based on the amount of lumber stacked, and the defendant ceased to employ stackers on the basis complained of. Moreover, it was manifest that the

defendant had no intention of returning to the method of payment in dispute. We, therefore, agree with the trial court, that there was no necessity for an injunction to prohibit future violations. Hecht Co. v. Bowles, Price Administrator, 321 U.S. 321, 64 S.Ct. 587; Fleming v. National Bank of Commerce of Charleston, D. C., 41 F.Supp. 833.

Affirmed.