**Lynn MARTIN, Secretary, United States Department of Labor, Plaintiff,**

v.

**FUNTIME, INC., Defendant.**

No. 1:90CV1268.

United States District Court, N.D. Ohio, E.D.

April 24, 1991.

Benjamin T. Chinni, Department of Labor, Cleveland, Ohio, for plaintiff.

Vincent Joseph Tersigni, John N. Childs, James D. Kurek, Buckingham, Doolittle & Burroughs, Akron, Ohio, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BATCHELDER, District Judge.

This matter came before the Court for a trial without a jury on March 27–29, 1991. In this case, the Secretary of Labor ("Secretary" or "plaintiff") seeks an order enjoining Funtime, Inc. ("Funtime" or "defendant") from violating the wage and hour provisions of the child labor laws, 29 U.S.C. § 212, 215(a)(4), 29 C.F.R. Part 570. Specifically, the Secretary seeks to enjoin violations of the wage and hour provisions as they relate to 14 and 15 year-old children. After hearing all of the testimony, reviewing all of the exhibits, and considering the arguments of counsel, the Court hereby makes the following findings of fact and conclusions of law.

### Findings of Fact

1. Defendant, Funtime, is, and at all relevant times described herein was an Ohio Corporation having its principal place of business at 1060 Aurora Road in Aurora, Ohio, within the jurisdiction of this Court, where it is engaged in the operation of amusement parks.

2. At all times hereinafter mentioned, Defendant was engaged at the above place of business in the operation of an amusement park under the name of Geauga Lake Park.

3. At all times hereinafter mentioned, Defendant maintained a place of business on Route 77 in Darien Center, New York, where it is engaged in the operation of an amusement park under the name of Darien Lake Park ("Darien"), and maintained a place of business at 10101 Riverside Drive in Powell, Ohio, where it is engaged in the operation of an amusement park under the name of Wyandot Lake Park ("Wyandot").

4. Defendant is and at all times hereinafter mentioned was engaged in the performance of related activities for a common business purpose, constituting an enterprise within the meaning of section 3(r) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203(r).

5. At all times hereinafter mentioned prior to March 31, 1990, Funtime was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(2) of the FLSA as amended in 1977, 29 U.S.C. § 203(s)(2), having been an enterprise comprised exclusively of retail or service establishments and having an annual dollar volume in excess of $362,500.00 and having had employees engaged in commerce or in the production of goods for commerce including employees handling, selling or otherwise working on goods or materials that have been produced for or moved in commerce.

6. At all times hereinafter mentioned, subsequent to April 1, 1990, Funtime has been and is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1)(A) of the FLSA as amended in 1989, 29 U.S.C. § 203(s)(1)(A), having been and being an enterprise having an annual dollar volume in excess of $500,000.00 exclusive of excise taxes at the retail level and having had and having employees engaged in commerce or in the production of goods for commerce, including employees handling, selling, or otherwise working on goods or

materials that have been produced for or moved in commerce.

7. Defendant's normal operating season at each of the three parks it owns and operates is from the middle of May through the middle of September.

8. During the operating seasons of 1989 and 1990, Funtime employed numerous 14 and 15 year-old children in various occupations throughout the parks.

9. During the course of the employment of these children at each park, Defendant regularly employed 14 and 15 year-old children in operations requiring them to work:

    a.  past 7:00 p.m. on days when school was in session,

    b.  before 7:00 a.m.,

    c.  past 9:00 p.m. on days when school was not in session,

    d.  more than 18 hours per week during weeks when school was in session,

    e.  more than 3 hours per day on days when school was in session,

    f.  more than 40 hours per week during weeks when school was not in session,

    g.  more than 8 hours per day on days when school was not in session.

10. Defendant was investigated by the Department of Labor in 1985 at Wyandot Lake Park (the "1985 investigation"). As a result of the 1985 investigation, Defendant was assessed a civil money penalty for violations of the child labor provisions of the FLSA, of which defendant paid a reduced amount.

11. Defendant was investigated by the Department of Labor in March 1990 at Geauga Lake. During this investigation, which concluded in May of 1990, the investigator advised Defendant of the requirements for compliance with the child labor provisions of the FLSA. That investigation covered the operating seasons of 1988 and 1989, and revealed many hundreds of individual violations during each season.

12. During the summer season of 1990, each of the three parks owned by Defendant employed children for hours and times as set forth in Finding of Fact 9 above. At Darien Lake and Wyandot Lake parks the number of children so employed was substantial, as was the number of individual violations.

13. All of the alleged violations of the child labor standards referred to in Findings of Fact 9 and 12 were determined directly from the records of the Defendant.

14. The ages of all of the children employed contrary to the Act's provisions were verified by the Plaintiff through either school records, state records, state age and schooling certificates, birth certificates and records of the Defendant.

### Conclusions of Law

■ 1. The business activities conducted by the defendant constitute an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Sections 3(r), 3(s)(2) and Section 3(s)(1)(A) of the FLSA, 29 U.S.C. §§ 203(r), (s)(2), and (s)(1)(A). Defendant is, therefore, subject to the provisions of the FLSA.

2. The activity described in Findings of Fact 9 and 12 constitutes a violation of the provisions of Title 29 U.S.C. § 212, and the Regulations at 29 C.F.R. Part 570, and such violation is prohibited by Title 29 U.S.C. § 215(a)(4).

■ 3. As a result of the 1985 investigation of defendant and the continued violations after the spring 1990 investigation, it is determined that the violations of 29 U.S.C. § 215(a)(4) are willful in nature.

4. Since it is undisputed that the defendant committed numerous violations, and the Court has determined that those violations were willful, the only remaining legal issue is whether issuance of the injunction is appropriate.

■ 5. The defendant contends that in this case an injunction would be inappropriate because the past violations were unintentional and defendant has engaged in serious efforts to reduce the number of violations, and the defendant urges the Court to consider the nature of its business and the "inherent[ ] difficult[y] for Defendant to monitor all the minors it employs to ensure they are not working beyond the time limitations imposed under the FLSA."

(Defendant's Trial Brief, at 6). As the plaintiff correctly notes, however, the defendant's mere statement that it did not know that most of the violations were occurring is not dispositive, for if it were, an employer could escape the strictures of the law simply by ignoring the reality of what was occurring in its places of business. Two excerpts from the regulations of the Wage and Hour Division indicate this same rule. First, "Work not requested but suffered or permitted is work time." 29 C.F.R. § 785.11. Second,

> ... [I]t is the duty of management to exercise its control and see that the work is not performed if it does not want it to be performed.... The mere promulgation of a work rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so.

29 C.F.R. § 785.13. In addition, as one court has held,

> [A]n employer's knowledge is measured in accordance with his "duty to inquire into the conditions prevailing in his business." ... With these principles in mind we need only inquire whether the *circumstances* of the present case were such that the employer either had knowledge that minors were illegally in his employ, or else had the opportunity through reasonable diligence to acquire knowledge.

*Gulf King Shrimp Co. v. Wirtz,* 407 F.2d 508, 512 (5th Cir.1969) (quoting *Lenroot v. Interstate Bakeries Corp.,* 146 F.2d 325, 328 (8th Cir.1945)). In the present case the Court has no trouble concluding that the defendant either knew about the violations or could easily have discovered them, since many violations involved an impermissible number of hours per week and the violations were obvious from the defendant's own time records.

6. The defendant also contends that the injunction should not issue when the Court finds sufficient evidence to indicate an intent to comply with the Act. *See e.g., Marshall v. J.C. Penney Co.,* 464 F.Supp. 1166 (N.D. Ohio 1979); *see also Walling v. Youngerman–Reynolds Hardwood Co.,* 325 U.S. 419, 65 S.Ct. 1242, 89 L.Ed. 1705 (1945). Although the point of law cited by the defendant may be correct, in the present case the evidence of intent to comply with the Act is clearly insufficient to warrant denial of the injunction. Although defendant presented a witness from each of its three parks who testified that management at each park would do what is necessary to stop the violations, the conduct at Wyandot and Darien speak louder than those words.[1] There was an investigation of child labor violations at Wyandot in 1985, and there was an investigation at Geauga Lake in the Spring of 1990. Despite these investigations of Funtime, hundreds of violations occurred at both Wyandot and Darien during the 1990 season. This evidence indicates that violations are likely to continue to occur. Funtime cannot now avoid the requested injunction by claiming that even though it owns three parks, those parks are separate entities and officials at Darien and Wyandot had no way of knowing that an investigation was occurring at Geauga. Thus, Funtime has presented no adequate reason why the injunction should not issue.

7. The Plaintiff is entitled to an injunction restraining the Defendant, its agents, and all other persons acting in concert with them from violating the provisions of 29 U.S.C. § 212 and 215(a)(4).

IT IS SO ORDERED.

---

1. During the 1990 season, officials at Geauga Lake made substantial progress in reducing the number of individual violations at Geauga Lake, from +900 in 1989 down to 45 in 1990. In addition, park officials demonstrated that they were taking additional curative steps to further reduce or even eliminate such violations. The fact that the management at Geauga Lake took the steps they did can be attributed in no small part to the presence of Thomas Buckley, the Labor Department investigator who conducted the investigations at Geauga Lake. Mr. Buckley made helpful suggestions and interacted closely with park officials, something the investigators at Wyandot Lake and Darien Lake did not do. In fact, if the injunction in this case was sought only against Geauga Lake Park, rather than Funtime, Inc., it is very unlikely that the Court would grant the injunction.