**Alexis M. HERMAN, Secretary of Labor, United States Department Of Labor, Plaintiff,**

v.

**CITY OF ST. PETERSBURG, FLORIDA, POLICE DEPARTMENT, Defendant.**

No. 8:99CV1269T17MAP.

United States District Court, M.D. Florida, Tampa Division.

Feb. 12, 2001.

---

**1330**

Ann G. Paschall, Robert L. Walter, Jaylynn F. Fortney, U.S. Dept. of Labor, Office of the Solicitor, Atlanta, GA, Henry L. Solano, Office of the Solicitor, U.S. Department of Labor, Atlanta, GA, for Alexis M. Herman, Secretary of Labor, United States Department of Labor, plaintiff.

Thomas M. Gonzalez, Donald Collins Barbee, Jr., Thompson, Sizemore & Gonzalez, P.A., Tampa, FL, for City of St. Petersburg, Florida, Police Department, defendant.

### ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

This cause is before the Court on Defendant City of St. Petersburg's Motion for Summary Judgment (Dkt.8), Plaintiff's response (Dkts.12, 23), Plaintiff's Motion for Partial Summary Judgment (Dkts.10, 11), and Defendant's responses, (Dkts.13, 16, 19).

## I. INTRODUCTION

Plaintiff brought this action under 29 U.S.C. Sec. 217, the Fair Labor Standards Act of 1938, as amended, (hereinafter "FLSA") to permanently enjoin defendant from violating §§ 7 and 15(a)(2) of the FLSA. Plaintiff requests that the Court require Defendant to pay back wages found by the Court due employees under the FLSA, for a period of two years prior to commencement of this action. In addition, Plaintiff requests other relief including interest on back wages as established by the Secretary of Labor, pursuant to 26 U.S.C. § 6621, from the date it became due until paid, and the costs of this action.

## II. FACTUAL BACKGROUND

The City of St. Petersburg ("City") and the Police Benevolent Association ("Union") entered into two collective bargaining agreements governing the terms and conditions of employment for police officers and technicians. (Ex. 2, Excerpts from Collective Bargaining Agreement dated January 11, 1999 at pages 44–45; Ex. 3, Excerpts from Collective Bargaining Agreement dated October 1, 1996 at pages 44–45). The first agreement ("Agreement 1") extended from October 1, 1996 through September 30, 1998. The second agreement ("Agreement 2") extended from January 11, 1999 through September 30, 2001. These agreements created three different classes of employee shifts: day shift, flexible shift and evening/night shifts. For those employees working the flexible and evening/night shifts, the terms of both agreements require the payment of "shift differentials," which are additional compensation paid to employees who work evening and overnight hours. In Agreement 1, Article 217, section 3 states: "shift differentials shall not apply on overtime hours worked." (Ex. 3, Excerpts from Collective Bargaining Agreement dated October 1, 1996 at pages 44–45). This sentence is deleted from Agreement 2. (Ex. 2, Excerpts from Collective Bargaining Agreement dated January 11, 1999 at

pages 44–45). In Agreement 2, the amount of shift differential paid is limited to forty hours. Neither agreement pays shift differentials to employees for more than forty hours of shift differential during a week, even if those hours are worked during times of the day when employees would otherwise qualify for shift differential. The Secretary of Labor, Alexis M. Herman, ("Secretary") alleges that the failure to pay shift differentials beyond the forty hours in both agreements violates the overtime provisions of the FLSA. (Dkt. 1 at 3). The Secretary therefore moves for partial summary judgment on the following issues:

1. Whether the City has violated the overtime provisions of the FLSA by failing to pay shift differential on hours worked over the forty hour maximum the City has set per week.

2. Whether an injunction prohibiting future violations of FLSA and prohibiting the withholding of back wages is appropriate.

Defendant moves for summary judgment on the issue of the City's liability under the FLSA.

## III. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c) (2000). However, the moving party bears the burden of initially proving that no issue of material fact exists. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265, (1986). In *Celotex,* the Court held that rule 56(e) requires the non-moving party to go beyond the pleadings in establishing whether there are specific facts showing a genuine issue to be resolved at trial. *See id.* A genuine issue exists where the record, taken as a whole, contains evidence "such that a reasonable jury could return a verdict for the nonmoving party." *See Anderson v. Liberty Lobby,*

*Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202, (1986). The Court has the responsibility to examine the evidence in the record and determine whether genuine issues exist for trial. Therefore, if the evidence is not probative and the nonmoving party fails to show that a genuine issue exists, summary judgment should be granted. *See id.* In determining whether a genuine issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *See Sweat v. Miller Brewing Co.,* 708 F.2d 655 (11th Cir.1983). Although factual disputes preclude summary judgment, the "mere possibility that factual disputes may exist, without more, is not sufficient to overcome a convincing presentation by the party seeking summary judgment." *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir. 1980)

## IV. DISCUSSION

In her motion, the Secretary argues that she is entitled to partial summary judgment because the City has violated the overtime provisions of the FLSA by limiting the amount of shift differential paid to employees to a maximum of forty hours. (Dkt. 11 at ¶ 5). The FLSA requires employers to compensate their employees who work in excess of forty hours per week at a rate of one and a half times the regular rate at which they are employed. *See* 29 U.S.C. § 207(a). The regular hourly rate is the rate actually paid for the normal non-overtime work week. *See Walling v. Helmerich & Payne, Inc.,* 323 U.S. 37, 42, 65 S.Ct. 11, 89 L.Ed. 29 (1944). In calculating the regular rate of pay, the FLSA requires the employer to include shift differentials. *See* 29 C.F.R. 778.207(b) (2000); *See Bay Ridge Operating Co. v.. Aaron,* 334 U.S. 446, 468–69, 68 S.Ct. 1186, 92 L.Ed. 1502 (1948) (holding that the regular rate of pay must include shift differentials); *See Featsent v. Youngstown,* 70 F.3d 900, 904 (6th Cir. 1995). Shift differential is compensation at a higher wage or rate because of unde-

sirable hours, or disagreeable work. *See Bay Ridge Operating Co.*, 334 U.S. at 468, 68 S.Ct. 1186.

Under the FLSA, the employer is not required to pay shift differentials. However, once an employer decides to make payments in addition to the minimum wage, as Defendant has here, it must do so in accordance with the FLSA. *See id.* In computing overtime, the FLSA requires that the overtime rate be not less than one and one-half the "bonafide rate established for like work performed during non-overtime hours." 29 C.F.R. § 778.308(b). Additionally, the FLSA provides that, although the parties can agree to different base rates for different types of work, once a rate has been agreed upon for a particular type of work, the parties cannot lawfully agree the rate will be lower simply because the work is performed during statutory overtime hours, or in a week where statutory overtime is performed. *See* 29 C.F.R. § 778.316.

In response, Defendant first argues that shift differentials are not part of the "regular rate," but instead amount to bonuses for when the overtime is performed. (Dkt. 19 at ¶ 19). Read in context, Defendant argues, the term "rate" as used in 29 C.F.R. § 778.316 does not refer to the "regular rate." If it did, the City cautions, "then other forms of compensation such as year-end bonuses or monthly commissions or non-monetary consideration would be swept within the meaning of the term." Defendant contends that the "rate" must mean the monetary compensation the employer has agreed the work itself is worth.

▇ The City's argument, however, is not persuasive on this point. Under § 207(e) of the FLSA, the "regular rate" is defined to include "all remuneration for employment paid to, or on behalf of the employee." However, § 207(e) also excepts from the "regular rate:"

(1) sums paid as gifts; payments in the nature of gifts made at Christmas time or on other special occasions, as a reward for service, **the amounts of which are not measured by or dependent on hours worked, production, or efficiency;**

(2) payments made for occasional periods when no work is performed due to vacation ... and other similar payments to an employee **which are not made as compensation for his hours of employment;**

(3) Sums paid in recognition for services performed during a given year if either (a) both the fact that the payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period....

29 U.S.C. § 207(e) (emphasis added).

The examples Defendant uses, the "year end bonuses and monthly commissions," unlike shift differentials, do not compensate the employee for his hours of employment and such examples are excludable from the regular rate. *See id.; see also Featsent*, 70 F.3d at 904 (unlike the payments listed in 29 U.S.C. § 207(e)(2), shift differentials compensate the employee for hours of employment).

▇ Additionally, Defendant's argument that the "rate" within the meaning of 29 C.F.R. § 778.316 must mean what the employer has agreed the work itself is worth, is not persuasive. Even if the City and the Union agree on a rate, this agreement cannot bargain away the employees' rights under the FLSA. *See Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981). "[E]mployees are not to be deprived of the benefits to the [FLSA] simply because they are well paid or because they are represented by strong bargaining agents." *Jewell Ridge Coal Corp. v. Local No. 6167, United Mine Workers of America*, 325 U.S. 161, 167, 65 S.Ct. 1063, 89 L.Ed. 1534 (1945). Moreover, the FLSA still requires that, if a shift differential is part of the regular rate of pay, it is also to be included in calculating overtime. *See Bay Ridge Operating Co.*, 334 U.S. at 468, 68 S.Ct. 1186.

The City draws a distinction between overtime and shift differentials, arguing that the purposes behind shift differential and statutory overtime are completely different. (Dkt. 19 at ¶ 22). Defendant contends that, while shift differentials pay the employee for work on a less desirable shift, overtime is paid to compensate the employee for work beyond forty hours in a week. (*See id.*) This contention is correct, but does not alter the Court's interpretation of the FLSA.

## A. Fixed Day Shift Employees

As stated in the collective bargaining agreements, the shift differential is paid only to employees who work "other than the normal shift on a regularly assigned shift relief starting between 1:00 p.m. and 4:00 a.m." (Ex. 2, Excerpts from Collective Bargaining Agreement dated January 11, 1999 at pages 44–45; Ex. 3, Excerpts from Collective Bargaining Agreement dated October 1, 1996 at pages 44–45). As the City's affidavit of Julie Upman illustrates, those employees who are assigned to a regular day shift schedule (one which does not normally pay shift differential) and who work additional hours, do not receive shift differentials even if the shift falls within the reliefs which carry a shift premium. The basis for the non-payment of the premium is that the extra hours are not "regularly assigned." (*See* Corrected Aff. Julie Upman ¶ 7–9). This contention is correct, but only as it applies to those employees who are scheduled to day shifts. As explained in a 1959 arbitration case:

> [t]he purpose of shift differential is to compensate for the inconvenience of being regularly assigned to an afternoon or night shift. A prime purpose of overtime is to compensate for long hours, before or after one's regular eight hours. Necessarily, overtime employees cause a day employee to work outside his regular shift. For this he receives a premium rate(time and one-half). He is not entitled to a shift premium for these hours because he does not work them regularly, and he is compensated for the

long and irregular hours by the overtime rate.

*See General Cable Corp. v. International Brotherhood of Elec. Workers, Local Union No. 338*, 33 Lab.Arb. (BNA) 327, 329 (1959) (Larson, Arb.); *See also Visitron Corp. v. Chemical Mfg. Div. and Oil, Chem. & Atomic Workers Int'l Union*, 73 Lab.Arb. (BNA) 677 (1979) (Rybolt, Arb.); *In re Ideal Corrugated Box Co. and Local Union 164, Int'l Brotherhood of Pulp Sulphite and Paper Mill Workers*, 47 Lab. Arb. (BNA) 129 (1965) (Hayes, Arb.); *In re Pennwoven, Inc. and United Mine Workers of Am., Dist. 50, Local 12318*, 14 Lab.Arb. (BNA) 649 (1950) (Wilcox, Arb.) (holding a special payment is made for the disruption of normal living customs, "for sleeping by day and working by night"). As these decisions show, those employees who work a regular day shift are amply compensated when they work late by overtime.

## B. Flexible Shift Employees and Night Shift Employees

The same cannot be said, however, for those employees who regularly work an evening or night shift. In drawing the distinction between overtime and shift differentials, the City illustrates precisely why the collective bargaining agreements violate the FLSA, as the agreements relate to those employees working flexible and night/evening shifts, i.e. shifts that include differentials.

Because flexible shift employees have no particular schedule, the collective bargaining agreements apply shift differential based on their start times. (*See* Ex. 2, Excerpts from Collective Bargaining Agreement dated January 11, 1999 at pages 44–45; Ex. 3, Excerpts from Collective Bargaining Agreement dated October 1, 1996 at pages 44–45; *see also* Corrected Aff. Julie Upman ¶ 12). For these employees, there is no requirement that the employee be "regularly assigned" to a premium shift, unlike the day shift employee, because they have no regular shift. (*See*

Corrected Aff. Julie Upman ¶¶ 11–12). Based on the employees' start time, their regular rate includes a shift differential, if they work one of the shifts carrying a shift differential. After working into their forty-first hour in a shift that pays shift differential, however, the hourly rate for these employees is reduced, because shift differentials are capped at forty hours. Because the FLSA requires shift differential to be included in calculating overtime, meaning those hours past forty in a workweek, this violates the FLSA by not compensating the employee at one and one-half times the bona fide rate established in good faith for the same work during non-overtime hours. *See* 29 C.F.R. § 778.308(b). These employees still have "the inconvenience of being regularly assigned an evening or afternoon shift," but lose the benefit of being compensated at a shift differential rate for working the undesirable shift once they work into their forty-first hour.

The same can be said for those employees working "on a regularly assigned shift/relief starting between 1:00 p.m. and 4:00 a.m.," essentially, the night shift. (Ex. 2, Excerpts from Collective Bargaining Agreement dated January 11, 1999 at pages 44–45; Ex. 3, Excerpts from Collective Bargaining Agreement dated October 1, 1996 at pages 44–45). These employees also lose the benefit of having shift differentials included in calculating overtime compensation after reaching their forty-first hour, and thus have their hourly rate reduced as a result.

## V. CONCLUSION

The Fair Labor Standards Act, 29 U.S.C. § 207 et. seq., fixes not just minimum wages, but maximum hours, at forty per workweek, unless the employee receives compensation for the hours in excess of forty at a rate of not less than one and one-half times the "regular rate at which he is employed." 29 U.S.C. § 207(a)(1). It is well settled that once an employer agrees to pay a shift differential, the overtime rate, which compensates an employee at one and one-half his regular rate after forty hours of work in a workweek, includes these shift differentials in calculating overtime. *See Featsent,* 70 F.3d at 904.

The overtime provisions of the FLSA serve two purposes. *See Donovan v. Brown Equip. & Serv. Tools, Inc.,* 666 F.2d 148, 151 (5th Cir.1982). The first purpose is to spread employment by placing financial pressure on the employer to hire additional workers rather than to continually employ the same number of worker for longer hours. *See id.* The second purpose is to compensate employees who do work "overtime" for the burden of having to do so. *See id.; see also Walling v. Helmerich & Payne, Inc.,* 323 U.S. 37, 40, 65 S.Ct. 11, 89 L.Ed. 29 (1944); *Walling v. Youngerman–Reynolds Hardwood Co.,* 325 U.S. 419, 423–24, 65 S.Ct. 1242, 89 L.Ed. 1705 (1945). Therefore, the FLSA forbids pay plans that have the effect of reducing the pay for overtime to less than one and one-half times the employees "regular rate" even though the plans may be acceptable to the employees involved. *See id.*

The facts alleged by the Secretary, even when construed in the light most favorable to Defendant, show that Defendant's collective bargaining agreement with the Union violates the overtime provisions of the FLSA. Therefore, the Secretary is entitled to partial summary judgment and the issuance of a permanent injunction preventing the City from future violations of the FLSA and requiring the payment of back wages in accordance with the Secretary's complaint. Accordingly, it is

**ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Dkt.10) is **granted.** Defendant's Motion for Summary Judgment (Dkt.8) is **denied.**