Tracy KLINEDINST, Plaintiff-Appellant,

v.

SWIFT INVESTMENTS, INC., a Florida corporation d.b.a. Fantastic Finishes of Palm Beach, Inc., Defendant-Appellee.

No. 00-13092.

United States Court of Appeals,

Eleventh Circuit.

Aug. 6, 2001.

Appeal from the United States District Court for the Southern District of Florida. (No. 99-08913-CV-SH), Shelby Highsmith, Judge.

Before TJOFLAT and WILSON, Circuit Judges, and RESTANI*, Judge.

WILSON, Circuit Judge:

Tracy Klinedinst appeals from the district court's grant of summary judgment in favor of his former employer, Swift Investments. Klinedinst sued Swift for failure to pay overtime in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201, *et seq*. The district court held that Klinedinst's position falls within an exemption to the Act for "commission" workers. Because the district court incorrectly determined that the exemption applies, we vacate its grant of summary judgment.

## I. BACKGROUND

Swift operates an auto repair and body shop. Klinedinst was employed as an automobile painter for Swift. Klinedinst received a salary from Swift based on the number of "flag hours" worked in a forty-hour work week.[1] Klinedinst sued Swift for violating the Fair Labor Standards Act (FLSA). He alleges that between January 1, 1998 and December 31, 1998, he worked approximately two thousand overtime hours beyond his forty-hour work week and approximately one thousand additional overtime hours between January 1, 1999 and June 30, 1999. He contends that Swift did not compensate him for this overtime pursuant to the FLSA. Swift stipulated that Klinedinst was not paid overtime.

For each repair job, Klinedinst was compensated according to a repair estimate. The labor portion of the estimate was calculated by multiplying the predetermined "flag hours" by the auto shop's hourly rate.

---

*Honorable Jane A. Restani, Judge, U.S. Court of International Trade, sitting by designation.

[1]Although the "Employee New Hire Sheet" (the equivalent to an employment contract) is not at issue in this dispute, it states that Swift intends for Klinedinst to work forty-hour weeks.

The "flag hours" were derived from a database utilized by auto repair shops and insurance adjusters. Thus, they did not necessarily reflect the actual time spent completing a job. If more than or fewer than the predetermined number of flag hours were required to complete a job, Swift would nevertheless pay the painter for the predetermined number of hours even though he did not actually work that many hours.

The hourly rate varied from $12 to $15 depending on the number of hours worked per week and the number of hours allotted to the paint labor component of the repair estimate. Klinedinst was compensated for each paint job he performed based on the following formula: the "flag hours" allotted to the paint labor component of the repair estimate was multiplied by his hourly rate. Swift did not maintain records of the actual hours that Klinedinst worked, and Klinedinst was paid for the maximum amount of flag hours, regardless of the actual hours worked. Both parties refer to this compensation method as a "flat rate" system. Klinedinst contends that although Swift applied this flat rate system, it deducted some of his predetermined flag hours and used them to compensate the detailers who worked on the cars after he painted them.

Both parties filed motions for summary judgment. The district court granted Swift's motion for summary judgment and denied Klinedinst's motion. The district court concluded that the overtime exception applied because Klinedinst's compensation under the flat rate system constituted commissions on services which were exempt from the FLSA's requirement of overtime pay and because Klinedinst's rate never fell below twelve dollars per hour so he never earned less than one and a half times the minimum wage of five dollars and fifteen cents per hour.

## II. DISCUSSION

Summary judgment is appropriate when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). We review the district court's grant of summary judgment to Swift *de novo. See Strickland v. Water Works & Sewer Bd. of the City of Birmingham,* 239 F.3d 1199, 1203 (11th Cir.2001) (involving cross-motions for summary judgment).

Generally, employers are required to pay employees overtime for hours worked in excess of forty hours per week. The FLSA provides in pertinent part:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). Swift contends that because Klinedinst worked on a commission basis and it met the

overtime exemption requirements, it was not obligated to pay Klinedinst overtime. The district court agreed. We review to examine whether Swift met the statutory and regulatory requirements of the commission exemption.

## A. Did the payment system represent a commission?

The issue before us is whether the district court properly concluded that Swift met the commissioned work exemption to this provision.[2] Whether Klinedinst's payments constituted commissions is an issue of law. Yet, it is an issue that finds little illumination from the sparse case law and the vague references in statutes and regulations. Nonetheless, it is the duty of the courts to determine whether wage payment plans are in substantial compliance with FLSA. We undertake that duty by construing the remedial statutory provisions both narrowly and sensibly. *See Walling v. A.H. Belo Corp.,* 316 U.S. 624, 634-35, 62 S.Ct. 1223, 86 L.Ed. 1716 (1942); *Brennan v. Valley Towing Co., Inc.,* 515 F.2d 100, 110 (9th Cir.1975); *Birdwell v. City of Gadsden, Ala.,* 970 F.2d 802, 805 (11th Cir.1992) (holding that FLSA provisions are interpreted liberally in the employee's favor and its exemptions construed narrowly against the employer).

Swift, as the employer, bears the burden of proving the applicability of a FLSA exception by " 'clear and affirmative evidence.' " *Birdwell,* 970 F.2d at 805. Swift avers that the flat rate system it utilized is a form of commission, which is incentive-based and encourages efficiency and speed. Klinedinst was assigned an hourly rate (flag rate) for a particular task, but if it took longer than the allotted time, he would not be paid extra. If he completed the task sooner, however, he would keep the difference. For example, deposition testimony reveals that whether a technician took ten or thirty hours to complete a job, he would still be paid the same. Specifically, Swift determined Klinedinst's compensation per job by multiplying the predetermined flag hours by his hourly rate. He was to receive compensation under this formula regardless of whether he actually worked the predetermined flag hours. The flat rate of pay was not the hours of time it actually took the worker to complete a job. It is a method of providing employees with an incentive to "hustle" to finish their jobs in order to obtain a larger number of jobs for greater compensation.

---

[2]The commissioned work exemption as written in 29 U.S.C. § 207(i) states:

> No employer shall be deemed to have violated [the overtime provisions of the Act] by employing any employee of a retail or service establishment for a workweek in excess of [40 hours], if (1) the regular rate of pay of such employee is in excess of one and one half times the minimum [wage], and (2) more than half of his compensation for a representative period (not less than one month) represents commissions on goods or services.

To bolster the claim that the flat rate system constituted a commission, Swift cites to the Wage and Hour Division of the Department of Labor's Field Operations Handbook:

> Some auto service garages and car dealerships compensate mechanics and painters on the following basis: The painter or mechanic gets so much a "flat rate" hour for the work he or she performs. A "flat rate" hour is not an actual clock hour. The painter or mechanic may work only 7, 8 or 9 hours a day and still receive credit for 10, 11 or 12, etc., flat rate hours depending upon how much work he or she has done. Each job is assigned a certain number of hours for which the customer is charged, regardless of the actual time it takes to perform the job. The employee is given a certain proportion of that charge expressed in terms of so many dollars and cents per "flat rate" hour rather than in terms of a percentage of the charge to the customer. The dealer does not change the employee's share per flat rate hour if the charge to the customer is changed. In such situations Wage-Hour will not deny that such payments represent "commissions on goods or services" for purposes of Sec. 7(i) (*see* IB 778.117 and 779.413(b)). Such employment will qualify for exemption under Sec. 7(i) provided all the other tests of the exemption are met.

Field Operations Handbook, Section 21h04(d). An agency's internal directives to its employees, however, are without the force of law. *See Brennan v. Ace Hardware Corp.,* 495 F.2d 368, 376 (8th Cir.1974) (the Labor Department's Field Operations Handbook is without "the force and effect of law."); *Kirkland Masonry, Inc. v. C.I.R.,* 614 F.2d 532, 533 (5th Cir.1980) ("Although federal agencies are bound by their own regulations, a simple administrative directive to agency employees does not suffice to create a duty to the public").

Although the Field Operations Handbook is not entitled to *Chevron* deference,[3] we find it persuasive. Further support for this interpretation of commission may be found in 29 C.F.R. § 779.413(b), which states:

> Although typically in retail or service establishments commission payments are keyed to sales, the requirement of the exemption is that more than half the employee's compensation represent commissions "on goods or services," which would include all types of commissions customarily based on the goods or services which the establishment sells, and not exclusively those measured by "sales" of these goods or services.

*See also Mechmet v. Four Seasons Hotels, Ltd.,* 825 F.2d 1173, 1175 (7th Cir.1987) ("persons not engaged in the sale of goods—receivers, trustees, bailees, and others—are sometimes compensated in the form of what are commonly called commissions, and ... [may be considered] 'commissions' within the meaning of 29 U.S.C. § 207(i) if the other requirements of the section are satisfied"); Black's Law Dictionary 264 (7th ed. 1999) ("Commission: ... 5. A fee paid to an agent or employee for a particular transaction, usu. As a percentage of the money received from the transaction"); Merriam-Webster's Collegiate Dictionary 231 (10th ed.1996) (same).

---

[3]*See Chevron U.S.A., Inc. v. Natl. Resources Defense Council, Inc.,* 467 U.S. 837, 844-45, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *Chevron* held that if a statute was ambiguous, the courts would defer to an agency's reasonable interpretation of that statute. *Id.; Bank of America, N.A. v. FDIC,* 244 F.3d 1309, 1314 (11th Cir.2001).

The cumulative effect of these citations is persuasive because they support the basic conception of a commission without undermining the purpose or logic behind overtime.[4] The flat rate at issue (1) provides workers with an incentive to work quickly, while (2) paying them at a rate that exceeds minimum wage. The function of a commission exemption as embodied by section 7(i) is to ensure that workers who are paid on a commission basis are guaranteed to receive at least the legislated minimum wage without requiring them to work overtime for it. *See* 29 U.S.C. § 207(i). Payments of between $12 and $15 per flagged hour provide incentives for employees to work efficiently and effectively to the benefit of the employer, who may then take on more customers at a greater profit margin, and the employee, who reaps the benefits of increased flag hours regardless of the actual amount of hours worked. With this in mind, we conclude that Klinedinst's flat rate wages constitute a "commission" but are only exempt from overtime pay if Swift can establish that it has qualified for the overtime exemption provided in section 7(i). *See* Field Operations Handbook, Section 21h04(d).

Section 7(i) states:

> No employer shall be deemed to have violated [the overtime provisions of the Act] by employing any employee of a retail or service[5] establishment for a workweek in excess of [40 hours], if (1) the regular rate of pay of such employee is in excess of one and one half times the minimum [wage], and (2) more than half of his compensation for a representative period (not less than one month) represents commissions on goods or services.

29 U.S.C. § 207(i). As it is undisputed that all of Klinedinst's wages were derived from the flat rate system and we have determined that the aforementioned system constitutes a commission, the second component of section 7(i) is fulfilled.

### B. What was the regular rate of pay?

We next review whether Swift satisfied the first component of the exemption, which is the regular rate of pay. The "regular rate of pay" is the "hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed" and "by its very nature must reflect all payments which the parties had agreed shall be received regularly during the workweek, exclusive of overtime payments."

---

[4]The purpose of the FLSA-required overtime is two-fold: (1) to spread out employment by placing financial pressure on the employer to hire additional workers rather than employ the same number of workers for longer hours; and (2) to compensate employees who for a variety of reasons worked overtime. *See* H.R.Rep. No. 1452, 75th Cong., 1st Sess. (1937); S.Rep. No. 884, 75th Cong., 1st Sess. (1937); *Donovan v. Brown Equipment and Service Tools, Inc.,* 666 F.2d 148, 152 (5th Cir.1982); *Mechmet,* 825 F.2d at 1175-76.

[5]Automobile repair shops have been explicitly recognized as retail establishments. *See* 29 C.F.R. § 779.320.

29 C.F.R. § 779.419(b) (quoting *Walling v. Youngerman-Reynolds Hardwood Co.,* 325 U.S. 419, 65 S.Ct. 1242, 89 L.Ed. 1705 (1945)). The regular rate is determined by dividing the employer's total compensation during the workweek by the number of hours worked. *See* 29 C.F.R. § 779.419(b) (citing *Overnight Motor Co. v. Missel,* 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942)).

Swift states that Klinedinst's regular rate of pay was between $12 and $15 per hour. Assuming Klinedinst worked only forty hours per week, this represents at least double the then minimum wage of $5.15 per hour. *See* 29 U.S.C. § 206(a)(1).[6] However, both parties offer contradictory statements as to the number of hours Klinedinst actually worked and both at some point during the summary judgment proceedings admit that this disagreement forms the basis of an active factual dispute. Nonetheless, neither party kept records of the number of hours Klinedinst worked. Thus, neither we nor the district court can ascertain from the record developed to date Klinedinst's "regular rate" to compute his overtime compensation. Swift was obligated to "maintain and preserve" records of the "regular hourly rate of pay for any workweek in which overtime compensation is due under [§ 207(a) ].... " 29 C.F.R. § 516.2(a)(6)(i). It was also obligated to maintain records of the "[h]ours worked each workday and total hours worked each workweek." 29 C.F.R. § 516.2(a)(7). Swift failed to do so. The number of hours worked per week is a genuine issue of material fact for the factfinder. *Cf. Valley Towing Co.,* 515 F.2d at 111-112 (appellee failed to record applicable hourly rates or maintain records of both straight overtime hours worked and hours spent working on commission; on remand, the district judge was to order appellees to comply with the applicable record keeping requirements and determine overtime pay award since record was sufficient for this determination). As Klinedinst maintained that he worked at least 3000 hours more than the regular forty-hour week during his period of employment, this is still very much a live issue.

Therefore, the district court incorrectly concluded that Klinedinst's regular rate of pay never fell below twelve dollars per hour. In making this determination, the court improperly assumed that Klinedinst never worked more hours than the number of hours paid under the flat rate system. As both parties acknowledge, the number of hours Klinedinst actually worked did not necessarily equal the number of hours for which he was paid under the flat rate system and, in any given week, the number of hours actually worked could have been greater than or less than the number of flag rate hours for which Klinedinst was paid. *See* 29 C.F.R. § 778.117 ("Commissions (whether based on a percentage of total sales or of sales in excess of a

---

[6]This reflects the minimum wage for the period of January 1998 to June 1999.

specified amount, or on some other formula) are payments for hours worked and must be included in the regular rate. This is true regardless of whether the commission is the sole source of the employee's compensation or is paid in addition to a guaranteed salary or hourly rate, or on some other basis ..."). As a result, the assumption of a static forty-hour work week was error. Without knowing the regular rate of pay, we cannot determine whether it is greater than one and one half times the minimum wage. Hence, remaining factual inquiries preclude the legal determination of whether the section 207(i)(1) element of the overtime payment exception is satisfied.

## III. CONCLUSION

Swift's flat rate system constitutes a form of commission payment. Klinedinst, however, is still entitled to overtime compensation pursuant to the FLSA unless Swift meets the exemption requirements of section 7(i) of the FLSA. Because there is not enough evidence in the record to determine whether Swift met the first component of the exemption requirement—the regular rate of pay—we find that the district court erred in granting summary judgment to Swift. Accordingly, the district court's order is VACATED and REMANDED for further proceedings consistent with this opinion.

RESTANI, Judge, concurring in part, dissenting in part:

I concur in the majority's decision to vacate the district court's order and to remand for a determination of Klinedinst's regular rate of pay. I disagree, however, with the majority's conclusion that Swift's flat rate pay system results in "commissions" within the meaning of 29 U.S.C. § 207(i) (1994), so that the questions to be determined on remand are whether Klinedinst had any employment in excess of 40 hours per week and whether such work was compensated at one and one-half times the minimum wage.

The majority acknowledges that the FLSA is a remedial statute which is to be construed against the employer, so that the employer must prove its entitlement to an FLSA exception by "clear and affirmative evidence." *Birdwell v. City of Gadsden,* 970 F.2d 802, 805 (11th Cir.1992) (quoting *Donovan v. United Video, Inc.,* 725 F.2d 577, 581 (10th Cir.1984)). The majority, however, applies an expansive definition of "commissions" in order to bring the method of pay at issue here within the exception set forth in § 207(i). It seems to accord any payment that is based on a percentage of the payment to the employer status as a "commission" payment. By any ordinary understanding of the meaning of commissions, the payments to Klinedinst are not commissions. Klinedinst does not generate sales or jobs for his employer. Rather, he is an ordinary wage-earning employee performing service work in an automobile garage.

Not every method of payment which might encourage efficiency is a commission method. For example, piecework pay is not a commission. *See* 29 C.F.R. § 778.111(a) (2000) (overtime compensated at one and one-half piece rates).[1] Further, work in excess of forty hours per week is entitled to extra half-time pay if the worker is compensated by the day or by the job. 29 C.F.R. § 778.112.

Although sales commissions are the most common form of commissions, there is no doubt that some other forms of payment representing a percentage of the value of goods or services are easily recognized as commissions. Indeed, in finding that banquet waiters earned "commissions" under § 207(i), the Seventh Circuit notes that some persons paid on a percentage basis, such as receivers, trustees, and bailees, are not engaged in generating sales and their compensation is commonly called "commissions." *Mechmet v. Four Seasons Hotels, Ltd.,* 825 F.2d 1173, 1175 (7th Cir.1987). Nonetheless, because the meaning of "commissions" in § 207(i) is unclear and because it recognized that a simple dictionary definition could result in unintended loopholes, the Seventh Circuit carefully examined the purposes of the FLSA and the particular context of the banquet waiters' employment before recognizing an expansion of the usual categories of commission earners. *Id.* at 1175-77.

An examination of the purposes of the FLSA indicates that Klinedinst's employment does not fit the exception. One purpose of the FLSA's time and a half provisions was to prevent workers from working abnormally long hours and thereby taking jobs away from workers who preferred more normal hours. Another purpose was to spread work to reduce unemployment. A third purpose was to protect workers from impairing their health or incurring more accidents from tiredness. *See* H.R.Rep. No. 75-1452, at 8-9 (1937); S.Rep. No. 75-884, at 3-5 (1937); *Mechmet,* 825 F.2d at 1175-76. Unlike the banquet workers in *Mechmet,* who worked irregular and nonhazardous jobs, where accidents due to tiredness may not be a large concern, automobile repair, including painting, can be hazardous, and there is nothing to suggest that this work does not result in regular employment. Further, banquets were found to be large ticket items, and the business was described as "feast or famine." *Mechmet,* 825 F.2d at 1177. Reliable, long range estimation of the need for workers and the length of their hours was not possible. *See id.* This does not describe the case at hand. Swift has not shown that Klinedinst's type of employment is not exactly the type of employment that Congress intended be covered by the FLSA.

---

[1]A flat fee for cleaning used cars was found to be piece work. *See* Op. Ltr. FLSA-1042 (Dep't of Labor October 14, 1982).

Further, the majority, while recognizing that the Labor Department's Field Operations Handbook is not entitled to *Chevron* deference, nonetheless relies on it. The Labor Department appears somewhat at sea on the issue of commissions.[2] In an opinion letter regarding dancers who were compensated principally from a mandatory $5.00 charge per dance collected by the dancers for the club, the Labor Department stated that the charge was a flat fee not based on the value of the service and was therefore not a commission.[3] Op. Ltr. FLSA-1332 (Dep't of Labor Nov. 19, 1996). The Department also stated:

> [29 U.S.C. § 207(i) ] is designed to exempt those employees who can increase their productivity, and hence, their earning, by applying their ingenuity, skill and experience to tasks which will vary in difficulty from job to job. These types of employees perform a service that has an identifiable monetary value to the customer, but the amount of time and effort required to complete the service and the complexity of the task performed may often vary from job to job.

*Id.*

Putting aside the fact that the dancers could actually generate profits for the employer by selling more dances, and consequently look more like commission earners than banquet waiters, there was no reliance in either the Field Operations Handbook or in this case on increase in productivity based on ingenuity, skill and experience. Labor's opinion letter seems to represent a narrow view of what constitutes a § 207(i) commission, perhaps based on its unwillingness to accord any value to the particular service at issue. On the other hand, the portions of Field Operations Handbook applicable to garage workers relied on by the majority presents an expansive view. Neither expression of Labor's position reflects persuasive reasoning.[4]

The FLSA accepts that the willingness of workers to contract for a particular method of payment is not controlling. Whatever one's view of the current efficacy of this 1937 remedial legislation, it is not our place or the Labor Department's to circumvent it by adopting a definition of commission not clearly intended by Congress. Because there is considerable doubt as to whether Congress intended a payment plan such as Swift's to qualify as a commission plan under § 207(i), I would hold that Swift has failed in its burden to

---

[2]While 29 C.F.R. § 779.413(b), also relied upon by the majority, is entitled to deference, it does not define "commissions"; it merely recognizes that commissions may be based on either sales or services, as we acknowledge.

[3]The letter is also entitled to deference only to the extent it has power to persuade. *See Christensen v. Harris County,* 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000).

[4]*See Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944) ("The weight of [an agency's] judgment will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all the factors which give it power to persuade, if lacking power to control.").

demonstrate that it satisfies the exception to FLSA's time-and-a-half provisions.