In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1834

RONALD L. HOWARD, SCOTT R. KINCAID,
DONALD M. LOFTUS, et al.,

Plaintiffs-Appellants,

v.

CITY OF SPRINGFIELD, ILLINOIS,

Defendant-Appellee.

Appeal from the United States District Court
for the Central District of Illinois.
No. 98 C 3124--Jeanne E. Scott, Judge.

ARGUED SEPTEMBER 28, 2000--DECIDED December 12, 2001

   Before MANION, ROVNER, and DIANE P. WOOD,
Circuit Judges.

   ROVNER, Circuit Judge.  The plaintiffs in
this case are police officers with the
canine unit of the City of Springfield.
The officers are responsible for taking
care of the dogs assigned to them, but
the dogs are owned by the City. Although
the City provides kennels for the dogs,
the officers were encouraged to care for
them at home in order to maintain the
relationship with the dog that makes them
more effective, and each officer elected
to do so.

   The collective bargaining agreement
("CBA") between the City and the Police
Benevolent and Protective Association
provides compensation for the "kennel
time"--time spent by the officers caring
for the dogs. Pursuant to that agreement,
the officers are guaranteed the last hour
of paid duty time worked each day for
kennel time, and receive compensation for
one hour of kennel time at 1  times their
regular rate of pay on each regular day
off. The officers are not compensated for
kennel time on vacation, personal or sick
days, or on days in which they use
compensatory time or have in-service
training or training with their dogs.
Moreover, the officers do not receive a
kennel time allotment on days in which

they are called into duty or have their regular shift extended.

No one contends in this case that the City has failed to comply with the provisions of the CBA. The sole issue is whether the City has violated the Fair Labor Standards Act ("FLSA") in failing to compensate the officers for kennel time on the days not covered in the CBA. Although the CBA does not require compensation on those days, that does not end our inquiry because "congressionally granted FLSA rights take precedence over conflicting provisions in a collectively bargained compensation arrangement." Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 740-41 (1981).

Although acknowledging that it must compensate its officers for kennel time under the FLSA, the City contends that the CBA provisions are adequate to compensate the officers for all kennel time. The City has consistently maintained that the kennel time takes less than an hour on many days, and that by compensating for a full hour on regular days and regular days off, the excess compensation on those days covered the time spent on the unpaid days, thus averaging out to the required compensation. The district court held that there was a genuine dispute of material fact on whether the compensation covered all of the kennel time, and therefore, for purposes of the summary judgment, it assumed that the payments were insufficient to cover the non-compensated days. The court nevertheless granted summary judgment for the City, holding that certain premium payments made by the City could be used to offset its overtime liability for the unpaid kennel time and that, as a matter of law, those premiums exceeded the amount of overtime liability owed. The officers appeal that determination on a number of grounds.

I

First, the officers contend that the court erred in holding that the two-year statute of limitations applied to this action. Under 29 U.S.C. sec. 255(a), the statute of limitations for FLSA violations is two years unless the violation was willful, in which case the

limitations period is three years. The officers have failed to submit any evidence that the violation was willful in this case, and therefore the court properly held that the two-year period applied. On appeal, the officers point to cases such as Nichols v. City of Chicago, 789 F. Supp. 1438, 1445 (N.D. Ill. 1992), establishing that kennel time is compensable, and to the CBA which provided compensation for kennel time on regular duty days and regular days off. According to the officers, the prior cases and the CBA itself establish the City's knowledge that it was required to compensate the officers for all kennel time, including time spent on personal days, sick days, and days in which the officers were conducting in-service training, using compensatory time, or training with their dogs. The officers contend that the City's failure to do so constituted at least reckless disregard of its obligations under the CBA.

The inference that the officers would have us draw from the CBA provision, however, is not a reasonable one. Because the CBA was negotiated, it would require the corresponding inference that the union was aware that all of the kennel time was compensable, and that the union nevertheless agreed to a provision that would not provide that compensation which the law requires. Although the inclusion of compensation for kennel time in the CBA may evidence knowledge that the FLSA requires compensation for that time, it does not support an inference that the compensation provided was inadequate to cover all of the days in which kennel duties were performed. The district court properly determined that there was no genuine issue of fact regarding willfulness, and that the two-year limitations period applied.

The officers also assert that the court erred in holding that they were was not entitled to injunctive relief. Section 217 of the FLSA provides that courts have jurisdiction to enter injunctive relief for violations of the FLSA. In sec. 211, the FLSA sets forth the authority of the Secretary of Labor to conduct investigations and inspections for violations of the FLSA, and further states that "[e]xcept as provided in section 212 of this title, the Administrator shall bring all actions

under section 217 of this title to restrain violations of this chapter."/1 Courts facing the issue have uniformly held that according to that plain language, the right to seek injunctive relief rests exclusively with the Secretary of Labor. See, e.g., United Food & Commercial Workers Union, Local 1564 of New Mexico v. Albertson's, Inc., 207 F.3d 1193, 1197-98 (10th Cir. 2000); Powell v. Florida, 132 F.3d 677, 678 (11th Cir. 1998) (collecting cases). Plaintiffs have provided no basis for departing from that line of cases, and we hold consistent with those courts that private parties may not seek injunctive relief under the FLSA.

II

Turning to the merits of the claim, the officers also contend that the court erred in determining which premium payments could be used to offset the overtime liability and in applying those premium credits. First, the officers assert that payments for court time and for regular days off should not constitute premiums which could offset overtime liability.

Pursuant to the FLSA, an employer may credit some payments against any overtime it owes. Specifically, 29 U.S.C. sec. 207(h)(2) provides that "[e]xtra compensation paid as described in paragraphs (5), (6), and (7) of subsection (e) of this section shall be creditable towards overtime compensation payable pursuant to this section." Those subsections include:

(5) extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such employee under subsection (a) of this section or in excess of the employee's normal working hours or regular working hours, as the case may be;

(6) extra compensation provided by a premium rate paid for work by the employee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less than one

and one-half times the rate established in good faith for like work performed in nonovertime hours on other days; or

(7) extra compensation provided by a premium rate paid to the employee, in pursuance of an applicable employee contract or collective-bargaining agreement, for work outside of the hours established in good faith by the contract or agreement as the basic, normal, or regular workday (not exceeding eight hours) or workweek (not exceeding the maximum workweek applicable to such employee under subsection (a) of this section), where such premium rate is not less than one and one-half times the rate established in good faith by the contract or agreement for like work performed during such workday or workweek.

29 U.S.C. sec. 207(e)(5)-(7). The City asserts that those subsections encompass premium payments made to the officers for holidays, for court time, and for regular days off. The officers object to the inclusion of court time and the payments made on regular days off.

We turn first to court payments. The CBA provides that an officer appearing in court shall receive not less than two hours at the overtime rate, and that time spent in court in excess of one-half hour shall be paid at the overtime rate in addition to the guaranteed minimum. The City argues that payments for court time fall within sec. 207(e)(7), and may therefore be used to offset any overtime liability. Section 207(e)(7) encompasses premium pay required by the CBA for work outside of the hours established in good faith by the CBA as the basic, normal, or regular workday, where the premium rate is at least one and one-half times the rate provided for like work during the workday. There are a number of problems with holding as a matter of law that the payments for court time fall within this provision. First, no party has pointed to any language in the CBA establishing certain hours as the basic, normal or regular workday, and the statutory provision explicitly limits itself to in stances in which that workday is established by contract or agreement. Second, the premium pay for court time occurs regardless of whether that court time falls within the hours established as part of the regular day. In fact, a

common sense view would suggest that court time generally falls within a regular workday. Rather than focus on the language of the statute, the parties get bogged down in the language of 29 C.F.R. sec. 778.204 interpreting this provision. We note that sec. 778.204 is an interpretive bulletin from the Department of Labor, as are all sections in Part 778. See 29 C.F.R. sec. 778.1. As an interpretive regulation, it does not have the force of binding law. Shaw v. Prentice Hall Computer Publishing, Inc., 151 F.3d 640, 642 (7th Cir. 1998). It is therefore not entitled to deference, although courts may rely on it as persuasive evidence both of Congress's legislative and the Secretary's regulatory intent. Id.

That interpretive regulation, in relevant part, explains the statutory language as follows:

(b) Premiums for hours outside established working hours. To qualify as an overtime premium under section 7(e)(7) the premium must be paid because the work was performed during hours "outside of the hours established * * * as the basic * * * workday or workweek" and not for some other reason. Thus, if the basic workday is established in good faith as the hours from 8 a.m. to 5 p.m. a premium of time and one-half paid for hours between 5 p.m. and 8 a.m. would qualify as an overtime premium. However, where the contract does not provide for the payment of a premium except for work between midnight and 6 a.m. the premium would not qualify under this section since it is not a premium paid for work outside the established workday but only for certain special hours outside the established workday, in most instances because they are undesirable hours. Similarly, where payments of premium rates for work are made after 5 p.m. only if the employee has not had a meal period or rest period, they are not regarded as overtime premiums; they are premiums paid because of undesirable working conditions.

29 C.F.R. sec. 778.204(b). The parties devote much time to arguing whether court time can be considered "undesirable." The district court also took that approach, declaring that "[b]y its very language, sec. 778.204(b) addresses premiums paid

'only for certain special hours outside the established workday, in most instances because they are undesirable hours . . . .'" [emphasis in dist. ct. order] Order at 21. The court concluded that "[c]ourt time payments are not tied to 'certain special hours outside the established workday,'" and "[t]hus, the City may use court time premiums to offset the Plaintiffs' FLSA claims pursuant to sec. 207(e)(7)." Id. That approach, however, elevates the examples of cases that fall outside the statute into the rule for determining what cases fall within it. The appropriate test here is not whether the payments for court time are made because the hours were undesirable or because they were certain special hours. The test is set forth in the statute, and is whether the payments are made because the hours are outside the regular workday. The examples in the interpretive regulation merely clarify what type of payments made for hours outside the regular workday may still not qualify. The statute is clear that the reason for the payment must be that the hours fall outside the regular established workday. Payments made for another reason will not fall within sec. 207(e)(7). Therefore, payments made for only the most undesirable hours such as midnight to six, or for periods of time in which a person must work without a meal break, are payments that do not fall within that provision. In those examples, a factor other than the regular work hours motivated the payment. That does not mean, however, that those examples are exhaustive. A payment can fall outside sec. 207(e)(7) even if made for a reason other than the undesirability of the work; the test is whether the payments were made because the work fell outside the regular hours. Here, the payments were made for time spent in court. Whatever the motivation was for that payment, there is no evidence here that the payments were made because it fell outside the regular workday established by contract. As such, it does not fall within sec. 207(e)(7) of the statute. The City does not assert that the court time payments fall within any other provision, and therefore the district court erred in holding that the City could use the court time payments to offset any overtime liability it might incur.

The officers also argue that payments made for work performed on their regular days off do not constitute creditable premiums. Section 207(e)(6) provides that premium payments made on regular days off may be used as offsets "where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in non-overtime hours on other days." [emphasis added] The officers received 1 times their regular pay on those days, but inexplicably contend that such compensation does not become a premium rate until it exceeds 1  times the employee's regular rate. That is simply irreconcilable with the plain language of the statute, which excludes only payments less than, not equal to, 1  times the regular rate. Because this payment is equal to 1  times the regular rate, it falls within the statutory provision, and may be used to offset the overtime liability. See Reich v. Interstate Brands Corp., 57 F.3d 574, 578 (7th Cir. 1995); Nolan v. City of Chicago, 125 F. Supp. 2d 324, 331 (N.D. Ill. 2000).

The officers fare better with their argument that premium pay credits should only offset overtime liabilities that accrued in the same time period. As set forth above, the statute provides in relevant part that premium payments described in sec.sec. 207(e)(5),(6), & (7) "shall be creditable towards overtime compensation payable pursuant to this section." The City maintains that it can use all premium payments made during the years in issue to offset all overtime liability, regardless of when the payments were made and when the overtime was owed. The officers seek a more narrow construction of the statute that would allow such overpayments made during a given work period to be credited against amounts due during that same work period. The courts that have addressed this issue have taken divergent views, with no consensus at this point. Compare, e.g., Abbey v. City of Jackson, 883 F. Supp. 181 (E.D. Mich. 1995) with Roland Electrical Co. v. Black, 163 F.2d 417 (4th Cir. 1947) and Nolan, 125 F. Supp. 2d at 331-33. The district court here adopted the City's position, holding that all such premium payments could be used to offset the total liability. Because that amount exceeded the overtime owed, the court granted summary judgment for

the City.

The court's decision was based in part on its conclusion that if the City was restricted to using premium pay offsets only in the pay period in which they were earned, the officers would receive an undeserved windfall. We disagree. In fact, if the City were able to use premium payments in the manner contemplated by the district court, the City would be the recipient of the windfall, and in fact would be placed in a substantially better position than if it had complied with the overtime requirements of the FLSA all along. An example may help illustrate this point. If the City complied with the FLSA all along, it would have paid the overtime each pay period as it accrued. Subsequent premiums payments could not be used to reduce those overtime payments, because they would have already have been calculated and paid. For instance, a premium payment made for the Thanksgiving holiday would not be used by a conforming employer to offset overtime paid back in March. But that is precisely what the City seeks to do here. It is contrary to the language and the purpose of the statute.

The credit provision must be read in the context of the statute as a whole, which is designed to protect workers from the twin evils of excessive work hours and substandard wages. Barrentine, 450 U.S. at 739; Monahan v. County of Chesterfield, Virg., 95 F.3d 1263, 1267 (4th Cir. 1996). Toward that end, the statute requires the payment of time and a half for overtime work. Courts have long interpreted the FLSA as requiring that those payments be timely made. Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 703-07 (1945); Calderon v. Witvoet, 999 F.2d 1101, 1107 (7th Cir. 1993); Rogers v. City of Troy, New York, 148 F.3d 52, 55 (2d Cir. 1998). Thus, the statute is violated even if the employer eventually pays the overtime amount that was due. See id. In fact, that requirement may not be waived, and "even the workers' enthusiastic assent to deferred payment--a form of employer-held savings account--is ineffectual." Calderon, 999 F.2d at 1107. That principle is also found at 29 C.F.R. sec. 778.106, which provides in relevant part:

The general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends. When the correct amount of the overtime compensation cannot be determined until some time after the regular pay period, however, the requirements of the FLSA will be satisfied if the employer pays the excess overtime compensation as soon after the regular pay period as is practicable. Payment may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made.

Although that regulation is not entitled to deference, Shaw, 151 F.3d at 642, it is nonetheless persuasive as it is consistent with the interpretation of the FLSA that the courts have reached. Therefore, under the statute, overtime generally must be calculated and paid on a pay period by pay period basis. The City, however, advocates a method of pay ment that would allow it to pay its overtime obligations at a time far removed from when that overtime amount was due. That is inconsistent with the statutory requirement that overtime payments must be timely made.

The City's argument would eviscerate the protection intended by the overtime payment requirement. Consider an extreme example of the potential effects of this interpretation. An employer could require an employee to work long overtime hours without the FLSA-mandated overtime payments in one year in which the economy was depressed, thus depriving the employee of both the quality of life sought by the FLSA and the ability to supplement her income with a second job. Then, in the next year in which economic conditions are improved, the employer could pay premiums to the employee, and then use those premiums to offset the overtime liability. Or an employer engaged in the filing of tax returns could require substantial overtime in the tax season without incurring the costs of that overtime at that time, and could "pay" for that overtime with the double or triple time holiday pay in its contract for the rest of the year. In

essence, the employer could manipulate the payments to suit its economic concerns. That interpretation is completely divorced from the purpose of the FLSA. Accord Nolan, 125 F. Supp. 2d at 331-33. The language of the statute provides that those premium payments are creditable "towards overtime compensation payable pursuant to this section." Because the statute contemplates that overtime will be paid and calculated on a pay period basis, it is consistent with that language to calculate and apply credits in the same manner. See also 29 C.F.R. sec. 778.202(c) (credits may be given for daily compensation "against the overtime compensation which is due under the statute for hours in excess of 40 in that workweek" [emphasis added]).

Other regulations similarly point to that conclusion. For instance, 29 C.F.R. sec. 778.104 provides that an employer may not average the number of hours worked over two weeks in order to avoid paying overtime. Therefore, if an employee works 20 hours one week and 60 the next, theemployer owes overtime in the second week even though the two weeks average to 40 hours each. Just as that averaging would constitute an end-run around the overtime requirement, the City's attempt to apply credits whenever paid to all overtime liability attempts to accomplish the same result. Accordingly, the district court erred in allowing the blanket application of all premium payments to all overtime liabilities, and in permitting the City to credit court time payments against overtime liability. We therefore remand the case in order for the court to recalculate the damages consistent with this opinion. The parties will bear their own costs of this appeal.

AFFIRMED IN PART,
REVERSED IN PART, AND REMANDED

FOOTNOTE

/1 Section 212 is inapplicable here because it applies to child labor provisions, and directs the Administrator to bring all actions for injunctive relief "subject to the direction and control of the Attorney General."

MANION, Circuit Judge, concurring in part and dissenting in part. Although I agree with most of the court's analysis and conclusions of law in this case, I write separately to express my disagreement with the court's determination that the City may use premium pay credits to offset liabilities only when they occur during the same pay period. On this issue, I respectfully dissent.

Neither the provisions of sec. 207(h)(2) of the FLSA, nor its accompanying regulations, require such a limitation. The reasoning articulated in Abbey v. City of Jackson, 883 F. Supp. 181, 186-87 (E.D. Mich. 1995),/1 makes more sense. There, the district court, presented with this very issue, held that:

Forcing an employer, who has given a premium rate of pay for overtime, to forego the receipt of credit and to pay additional overtime punishes the employer without regard to whether it was attempting to avoid its obligation to adequately compensate employees for extra hours worked. Plaintiffs have not pointed to any regulations, statutes or current cases, which state that there is a congressional will to penalize an employer that inadvertently fails to follow FLSA by, in effect, assessing civil money damages beyond those enunciated in 29 U.S.C. sec. 216(b). Conversely, there is a clear congressional intent to allow an employer to offset premium rates of pay against overtime owed. 29 U.S.C. sec. 207(h). If I were to follow plaintiffs' reasoning, plaintiffs would receive a windfall and the purposes and goals of the statute would not be served. Therefore, defendant may offset the . . . premium payments against overtime owed.

This reasoning is especially persuasive in this case where, as the majority acknowledges, the officers have failed to submit any evidence that the City willfully violated the FLSA. I would, therefore, affirm the district court's decision allowing the City to use the premium payments (i.e., those recognized by this court) to offset any overtime compensation owed to the officers under the FLSA, and remand the case back to the court for a determination as to whether summary judgment was still appropriate in light of this decision.

FOOTNOTE

/1 See also Alexander v. United States, 32 F.3d 1571, 1577 (Fed. Cir. 1994) (premium pay is creditable toward any overtime compensation due under the FLSA); Kohlheim v. Glynn County, Georgia, 915 F.2d 1473, 1481 (11th Cir. 1990) (employer should be allowed to set off "all" previ-

ously paid overtime premiums against overtime
found to be due and owing under the FLSA).