James **BELL** and Tina Jones, individually and on behalf of others similarly situated, Plaintiffs,

v.

**IOWA TURKEY GROWERS COOPERATIVE (n/k/a/ West Liberty Foods), et al., Defendants.**

No. 4:03 CV 90457.

United States District Court, S.D. Iowa, Central Division.

Jan. 3, 2006.

Catherine Zamora Cartee, Cartee Law Firm, Davenport, IA, Joseph R. Gunderson, Gunderson, Sharp & Walke, LLP, Jason D. Walke, Gunderson Sharp & Walke LLP, Des Moines, IA, for James Bell, Plaintiff.

Gene R. Lasuer, Deborah M. Tharnish, Davis Brown Koehn Shors & Roberts, Des Moines, IA, for Iowa Turkey Growers Cooperative, Defendant.

### ORDER ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

PRATT, District Judge.

## I. INTRODUCTION

This motion for partial summary judgment stems from the failure of the Defendant, a meat processing company, to comply with the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1), § 206(e)(6). The Plaintiffs, who work in the Defendant's meat packing plant, received less overtime than they were entitled to under the FLSA. The Defendant admits that certain overtime payments fell short of the statutory requirements, but the parties dispute the proper method for remedying the underpayments.

## II. PROCEEDINGS

The Plaintiffs are a class of former and current hourly production workers for the Iowa Turkey Growers Cooperative, known together with its operating divisions as West Liberty Foods (collectively "WLF"). The Plaintiffs originally filed this suit in Iowa state court in Keokuk County. WLF filed a Notice of Removal of the case to this Court on August 19, 2003 (Clerk's No. 1) and filed an Answer on the same date (Clerk's No. 2). Approximately 387 former and current WLF employees have opted in to this federal class action, and there is a related "opt-out" class action lawsuit in the Iowa District Court in Keokuk County.[1] The Plaintiffs filed this Motion for Partial Summary Judgment on October 3, 2005 (Clerk's No. 67) and the Defendant filed a Resistance on October 24, 2005 (Clerk's No. 73). The Plaintiffs filed a Reply on November 14, 2005 (Clerk's No. 79). The Court held a hearing on December 16, 2005. The matter is fully submitted.

## III. FACTS

WLF operates three meat processing and meat production plants in Iowa with approximately 1,190 employees. The plants are located in the towns of West Liberty, Sigourney, and Mount Pleasant. WLF generated nearly $153 million in net sales in 2002 and $173 million in net sales in 2003. The total number of hourly production workers employed by WLF during the putative three-year class period was approximately 2,100 people. WLF is a non-union employer. There has never

---

1. The state court case is captioned *James Bell, et al. v. Iowa Turkey Growers Cooperative, et al.*, LALA 039263.

been a collective bargaining agreement at the three production facilities.

WLF hourly production workers operate on three shifts. The first shift is the largest, followed by the second and third shifts. At times there are no production workers on the third shift. Hourly production employees at the three plants are paid weekly. The 2003 Employee Handbook for the Sigourney plant set forth the guidelines for overtime and double-time pay at that plant. Because these policies are central to this lawsuit, the Court sets forth the language from the Employee Handbook below:

**Overtime**

As mentioned earlier, business circumstances may make it necessary to change the work schedule of some employees from time to time. You may be asked, and you will be expected, to work overtime to meet business requirements. Whenever possible, you will be given sufficient advance notice of overtime to plan accordingly. If overtime is required on short notice, you will be expected to work unless satisfactory arrangements can be made with your supervisor. Through your help, we will be better able to satisfy the needs of our customers.

For payroll purposes, "overtime pay" is one and one-half (1 ½) times your regular hourly rate and "double time pay" is two (2) times your regular hourly rate. You will receive overtime pay under the following guidelines:

1. If you work more than eight (8) hours in a day, or

2. If you work more than forty (40) hours in a work week, or

3. If you work on the sixth day of your workweek, generally the sixth day is Saturday, or

4. In addition to regular holiday pay, if you work on a paid holiday and are eligible for holiday pay.

You will receive double time pay if:

1. You work on the seventh day of your workweek. Generally the seventh day is Sunday, or

2. ***You work on the 7th consecutive day of your workweek for office/clerical employees.***

Exception to the above guidelines:

1. Employees who work regularly scheduled ten to twelve hour shifts with less than five days per week will receive overtime pay after forty (40) hours and will not receive daily overtime.

2. ***Office/Clerical and*** Part-time employees do receive overtime pay after forty (40) hours a workweek but will not receive daily overtime.

Sigourney Foods Employee Handbook, Exh. 14 at 13–14 (emphasis in original). The overtime provisions in the West Liberty Employee Handbook are nearly identical, while the Mount Pleasant Employee handbook did not include "more than eight hours in a day" pay or sixth day pay provisions because those forms of overtime were not offered at the Mount Pleasant plant.[2] *See* Exh. 17 at 4.2, Exh. 18 at 10–11.

The Sigourney Foods Employee Handbook also contained the following provision about shift premiums:

**Shifts and Shift Premium**

---

**2.** At the Sigourney plant, employees must have been paid for the five consecutive days prior to the sixth day in order to receive the sixth day overtime pay. At the West Liberty plant, employees received the overtime rate for working the sixth day of their normal schedule, even if the employee did not work one or more of the preceding five scheduled days. *See* Pls.' Statement of Undisputed Material Facts ¶ 38.

"Second shift" is a regularly scheduled work period that begins after 12:00 noon and before 7:00 P.M.

"Third shift" is a regularly scheduled period that begins after 7:00 P.M. and before 4:00 A.M.

Shift premium is provided for those employees working 2nd or 3rd shift.

Sigourney Foods Employee Handbook, Exh. 14 at 14. The West Liberty and Mount Pleasant Employee Handbooks contain similar provisions. *See* Exh. 17 at 4.3, Exh. 18 at 11. The shift premium for second shift was 20 cents per hour and the shift premium for third shift was 30 cents per hour.

The parties agree that WLF did not include the shift premium in its calculation of time and one-half for overtime purposes. WLF paid the shift premium for second and third shift employees at the Mount Pleasant Plant for all hours up to forty (40) hours in a workweek. When employees worked more than forty (40) hours in a workweek, they received overtime pay at a rate of time and one-half, but the rate did not fully include the shift premium. WLF states that the shift premium was included in the base pay but admits that it was not included in the extra "one-half" of overtime pay. Employees were paid double time for the seventh consecutive day worked. Again, employees received the shift premium for hours actually worked, but the shift premium was not included in the doubled pay.

At the West Liberty and Sigourney plants, where employees were eligible for overtime for hours exceeding eight in any workweek day and for any hours worked on sixth days (usually Saturdays) at a rate of time and one-half, employees received the shift premium for hours actually worked, but the shift premium was not included in the extra one-half pay. The result, as stated in the Plaintiffs' State-ment of Undisputed Material Facts, is that second shift employees working overtime or sixth day shifts received 10 cents less per hour than they would have received if the shift premium was included in the overtime rate, and third shift employees received 15 cents less per overtime or sixth day hour. Pls.' Statement of Undisputed Material Facts ¶¶ 31–33.

To illustrate, the Court will use an example from the Plaintiffs' Statement of Undisputed Material Facts, taken from the pay stub of an employee named Tina Jones. Jones's pay stub appears as follows:

| Earnings | Rate | Hours | This Period | Year to Date |
|---|---|---|---|---|
| Regular | 10.1000 | 47.80 | 482.78 | |
| Over Time | 5.0500 | 8.13 | 41.06 | |
| 2nd Shift Prem | | | 9.56 | |
| Double Time | | | | |
| Holiday | | | | |
| Vacation | | | | |
| Gross Pay | | | $533.40 | |

Jones's pay stub reflects that her base pay was $10.10 per hour. During the pay period represented on the pay stub, Jones worked a *total* of 47.80 hours, for which she was paid $482.78 (47.80 × $10.10). Of the 47.80 total hours that Jones worked, 8.13 hours were overtime hours. Thus, WLF determined that it owed Jones an additional $5.05 per hour, or one-half the hourly rate, for those 8.13 hours. She accordingly received an additional $41.06 (8.13 × $5.05). Finally, all of the 47.80 hours that Jones worked were second shift hours. Therefore, WLF calculated that it owed her an extra $0.20 per hour, or $9.56 (47.80 × $0.20). Jones's gross pay for the period was $533.40 ($482.78 + $41.06 + $9.56). *See* Pls.' Reply to Def.'s Resp. to Pls.' Statement of Undisputed Material

Facts (Clerk's No. 77–1) ¶¶ 31–32; *see also* Pls.' Ex. No. 34.

The problem with the pay that Jones received is that the $0.20 per hour shift premium was not included in the calculation of the overtime rate. Both parties agree that WLF should have calculated Jones's overtime pay by first adding in the shift premium and then calculating the overtime rate. Had the overtime rate been calculated properly, Jones would have received $10.30 per hour for all of the hours she worked ($10.10 + $0.20), plus an extra $5.15 per hour (0.5 × $10.30) for the 8.13 overtime hours she worked. Under this calculation, her extra overtime pay would have been $41.87 (8.13 × $5.15), or $0.10 more per overtime hour than what she actually received. Employees who worked the third shift were similarly shortchanged, by $0.15 per overtime hour worked. *See* Pls.' Reply to Def.'s Resp. to Pls.' Statement of Undisputed Material Facts ¶ 33.

Finally, the Court notes that unlike permanent WLF employees, temporary workers who were in the initial ninety days of their employment were hired and paid by an employment agency named Kelly Services until the spring of 2003. Because Kelly Services, and not WLF, paid these workers, the overtime payments fully included the shift premiums. WLF contends that it changed its payment policy on September 21, 2003, after it learned that the practice did not comport with the requirements of the FLSA. *See* Pls.' Statement of Undisputed Material Facts ¶ 45.

## IV. STANDARD FOR SUMMARY JUDGMENT

In a motion for summary judgment the Court's task is to consider the evidence identified in the parties' moving and resistance papers. Viewing that evidence in the light most favorable to the nonmoving par-

ty, the Court must decide whether there is any material dispute of fact that requires a trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); 10A *Wright, Miller & Kane, Federal Practice and Procedure* § 2712 (3d ed.2005). If there is no genuine issue as to any material fact, the Court will determine whether the moving party is entitled to judgment as a matter of law. *Breeding v. Arthur J. Gallagher and Co.*, 164 F.3d 1151, 1156 (8th Cir.1999). In this case, the parties agree that there are no material facts in dispute. The questions before the Court on this motion for partial summary judgment are purely legal.

## V. LAW AND ANALYSIS

### A. Background: The Fair Labor Standards Act and the "Regular Rate"

Congress enacted the FLSA in 1938 in order "to protect all covered workers from substandard wages and oppressive working hours." *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 739, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981). Among other things, the FLSA established nationwide minimum wage and maximum hours standards. 29 U.S.C. § 207(a)(1) (establishing a maximum forty-hour workweek); *see Moreau v. Klevenhagen*, 508 U.S. 22, 25, 113 S.Ct. 1905, 123 L.Ed.2d 584 (1993). Under the FLSA, an employer must pay a non-exempt employee overtime pay for hours worked in excess of forty hours "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1); *see Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 460, 68 S.Ct. 1186, 92 L.Ed. 1502 (1948); *Walling v. Youngerman–Reynolds Hardwood Co.*, 325 U.S. 419, 423, 65 S.Ct. 1242, 89 L.Ed. 1705 (1945). The overtime provisions in the FLSA "achieve[ ] its dual purpose of inducing the employer to reduce the hours

of work and to employ more men and of compensating the employees for the burden of a long workweek." *Walling,* 325 U.S. at 423–24, 65 S.Ct. 1242.

■ To determine the "regular rate" for purposes of calculating the overtime rate, the proper method is to use "the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed." *Id.* at 424, 65 S.Ct. 1242. The statute defines the "regular rate" as including "all remuneration for employment paid to, or on behalf of, the employee," with some exceptions. 29 U.S.C. § 207(e). Ordinarily, "[t]he regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109 (2005);[3] *Mumbower v. Callicott,* 526 F.2d 1183, 1187 (8th Cir.1975).

■ The FLSA requires employers to include shift differentials when determining the "regular rate" in order to calculate overtime pay. *Bay Ridge Operating Co.,* 334 U.S. at 468–69, 68 S.Ct. 1186 ("Where an employee receives a higher wage or rate because of undesirable hours or disagreeable work, such wage represents a shift differential . . . . Such payments enter into the determination of the regular rate of pay."); *see also Featsent v. City of Youngstown,* 70 F.3d 900, 904 (6th Cir. 1995) (observing that section 7(e) of the FLSA does not exclude shift differentials from the regular rate); *Reich v. Interstate Brands Corp.,* 57 F.3d 574, 578 (7th Cir. 1995) (same); *Thomas v. Howard Univ. Hosp.,* 39 F.3d 370, 372 (D.C.Cir.1994) (same); *Cabunac v. Nat'l Terminals*

*Corp.,* 139 F.2d 853, 854–55 (7th Cir.1944) (same); 29 C.F.R. § 778.207(b). WLF does not dispute that the FLSA mandates inclusion of the shift differential in the regular rate for calculation of overtime pay. Moreover, WLF admits that it did not include the shift differential in its determination of the regular rate prior to September 21, 2003, resulting in underpayments to employees who worked overtime and sixth days. But WLF argues that it is entitled to receive credits under the FLSA for the amount of overtime it did pay its employees, as well as for the sixth day premium pay it paid to employees. In addition, WLF argues that it should receive credit with respect to employees who erroneously received triple payments at the Mount Pleasant plant during a portion of 2003.

The FLSA includes a provision, 29 U.S.C. § 207(e), that defines "regular rate" for purposes of calculating overtime pay under § 207(a)(1):

> As used in this section the "regular rate" at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee, but shall not be deemed to include—
>
> (5) extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such employee under subsection (a) of this section or in excess of the employee's normal working hours or regular working hours, as the case may be;
>
> (6) extra compensation provided by a premium rate paid for work by the em-

---

**3.** In *Skidmore v. Swift,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944), the Supreme Court concluded that administrative interpretations of the FLSA are not binding on the courts, but they "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance."

ployee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days.

29 U.S.C. § 207(e)(5) and (6). Put differently, employers need not include premium rates paid for overtime when determining the "regular rate" in order to calculate overtime. Nor do they need to include premium rates paid for work on the sixth or seventh days, so long as those premium rates are equal to or greater than one and one-half times the rate for nonovertime work on other days.

The FLSA contains another provision, 29 U.S.C. § 207(h), which provides that employers may receive credit toward overtime deficiencies for certain overtime payments already made:

(1) Except as provided in paragraph (2), sums excluded from the regular rate pursuant to subsection (e) shall not be creditable toward wages required under section 6 or overtime compensation required under this section.

(2) Extra compensation paid as described in paragraphs (5), (6), and (7) of subsection (e) of this section shall be creditable toward overtime compensation payable pursuant to this section.

29 U.S.C. § 207(h). Under this provision, overtime premiums and sixth day premiums that are exempt from inclusion in the regular rate calculation are also creditable against overtime deficiencies.

B. *Is WLF Entitled to Credit Under 29 U.S.C. §§ 207(e)(5) and (h) for Sixth Day Premium Payments it has Already Paid to the Plaintiffs?*

■ WLF argues that it should receive credit, pursuant to §§ 207(e)(5) and (h), for

any sixth day premium payments it has already paid to the Plaintiffs, so long as those sixth day hours were also hours worked in excess of forty in a given workweek. Each of the provisions under § 207(e) specifies compensation that does not need to be included in the calculation of the "regular rate" for purposes of tabulating overtime pay. These exceptions to the regular rate include compensation such as gifts, travel expenses, health benefits, and, in the case of § 207(e)(5), overtime for hours worked in excess of forty in a week or eight in a day. *See* § 207(e)(1),(2),(4), and (5). Under the FLSA, employers are obligated to pay overtime only for hours worked in excess of forty in a week. When an employer elects to pay premium rates for other hours, the employer may receive credit, subject to certain restrictions, towards its overtime obligations. Thus, under § 207(h), overtime compensation that qualifies as an exception to the regular rate under § 207(e)(5) is creditable towards overtime deficiencies under § 207(h). WLF argues that when an employee's sixth day hours coincided with his or her overtime (i.e. more than forty) hours, the premium pay received by that employee should qualify for the exception in § 207(e)(5), and therefore be creditable under § 207(h). The Plaintiffs argue, in turn, that § 207(e)(6), not § 207(e)(5), is the proper vehicle for crediting sixth day premium payments. The Court concludes that the Plaintiffs' reading of the statute is the more appropriate interpretation.

While it is true that some of the sixth day hours worked by WLF employees were also hours worked in excess of forty in a workweek,[4] the parties' submissions reflect that employees need not have worked forty hours in a given workweek in

---

4. The parties agree that employees could only     receive time and one-half once—either for the

order to be eligible for sixth day premium pay. The Plaintiffs' Statement of Undisputed Material Facts (Clerk's No. 67–1) states:

> At the Sigourney plant employees must have been *paid* for the five consecutive days prior to the sixth day in order to be eligible for the sixth day overtime rate. As long as employees were paid for those first five days (whether it be based upon available vacation days or days actually worked), sixth day pay for hours worked was paid. At the West Liberty plant, employees were paid for hours worked on the sixth day (usually Saturday) of an employee's *normal schedule*, even if the employee did not work (for whatever reason) one or more of the preceding five scheduled workdays, usually Monday through Friday.

Pls.' Statement of Undisputed Material Facts ¶ 38 (emphasis in original). WLF does not dispute these facts. *See* Def.'s Resp. to Statement of Undisputed Material Facts (Clerk's No. 73–2) ¶ 38. Thus, employees at the Sigourney and West Liberty plants were eligible for sixth day premium pay regardless of whether they actually worked the preceding five days. This fact indicates that the purpose of the sixth day overtime premium was not to compensate employees for hours worked over forty in a particular week, but rather to compensate them for working on what otherwise would have been a day off—typically a Saturday. In essence, employees received extra pay for working a weekend day, regardless of whether they had worked a full week. This is the situation contemplated by 29 U.S.C. § 207(e)(6), and the Court will therefore look to that provision, rather than § 207(e)(5), to determine whether WLF

sixth day or for hours over forty, but not for both. *See* Pls.' Reply to Def.'s Resp. to Pls.'

may receive credit for any sixth day premium payments under § 207(h).

**C.  *Is WLF Entitled to Credit Under 29 U.S.C. §§ 207(e)(6) and (h) for Sixth Day Premium Payments it has Already Paid to the Plaintiffs?***

■ WLF argues that even if it is not eligible for credit under § 207(e)(5) for sixth day premium payments it has already made to the Plaintiffs, it should be eligible for credit under § 207(e)(6). Like the other provisions in § 207(e), § 207(e)(6) describes a type of compensation that is exempt from inclusion in the regular rate: "extra compensation provided by a premium rate paid for work by the employee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek." 29 U.S.C. § 207(e)(6). Thus, under § 207(e)(6), sixth day premium pay is exempt from inclusion in the regular rate and is generally creditable under § 207(h). However, unlike the overtime pay exception contained in § 207(e)(5), the sixth day premium pay exception in § 207(e)(6) includes the caveat that a sixth day premium is exempt from inclusion in the regular rate only "where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days." *Id.* As the Seventh Circuit explained in *Reich*:

> [I]f [an employee's] regular weekday rate were $10 and the rate for Sunday work were $15, the Sunday premium would not be figured back into the "regular rate," and time-and-a-half pay for overtime during the week would remain at $15. But if the Sunday rate were $14, the extra pay would be included in

Statement of Undisputed Material Facts (Clerk's No. 77–1) ¶ 32.

the "regular rate," raising the overtime rate for both weekdays and Sundays. *Reich*, 57 F.3d at 578.

The Plaintiffs contend that WLF should not receive any credit for the sixth day premium payments it made because those payments were less than one and one-half times the regular rate. The Plaintiffs argue that: (1) the sixth day premium rate that WLF paid to its employees did not fully include the shift differential; (2) because the sixth day premium rate did not fully include the shift differential, it was less than one and one-half times "the rate established in good faith for like work performed in nonovertime hours on other days"; and (3) therefore, the sixth day premium rate is not exempt from inclusion in the regular rate under § 207(e)(6). The Plaintiffs further assert that, if the Court adopts their argument, two results must follow. First, WLF may not receive credit for sixth day premium payments it has already made under § 207(h). And second, in order to account for the overtime deficiency created by WLF's failure to fully include the shift differential, WLF must now recalculate the regular rate to include the sixth day premium payments—including the improperly calculated payments of time and one-half—that WLF has already made. The parties' arguments are discussed below.

Both parties agree that there is little, if any, case law addressing the proper application of § 207(e)(6) where, due to an erroneous calculation of the regular rate on the part of the employer, the premium rate paid for sixth day work fell short of one and one half times the proper regular rate. At the hearing on the current motion for partial summary judgment, the Plaintiffs pointed the Court to *Brock v. Wilamow-*

*sky*, 833 F.2d 11, 17 (2d Cir.1987), a case construing 29 U.S.C. § 207(e)(7). Although § 207(e)(7) is not at issue in this case,[5] the provision is similar to § 207(e)(6) because it only applies where the premium rate is "not less than one and one-half times the rate established in good faith . . . for like work performed during such workday or workweek." 29 U.S.C. § 207(e)(7).

In *Brock*, the Secretary of Labor sued a temporary employment agency that had not included a premium paid for evening and night shifts in its overtime rate. When calculating the regular rate, the employer used the day shift rate, even when the employee had worked an evening or night shift. In that case, the evening and night shift premiums operated as large shift differentials—the evening shift premium was equal to roughly one-quarter the regular day rate, and the night shift premium was one-half the day rate. The Second Circuit determined that, under the statute, the employer should have calculated the regular rate by averaging an employee's total remuneration, including the evening and night shift differentials. Then, when paying overtime, the employer was obligated to pay one and one-half times that average. The court made clear that the night shift premium would be exempt from inclusion in the regular rate when an employee worked *only* the night shift, because that employee's remuneration would be "not less than one and one-half times the rate established in good faith by the contract or agreement for like work performed during such workday or workweek," as required under § 207(e)(7). But, for an employee working day or evening shifts in addition to the night shift, the remuneration had to be averaged, and as a result that employee's regular rate

---

**5.** Section 207(e)(7) provides an exception to the regular rate for extra compensation made under a contract or collective bargaining agreement. Here, there was no contract or collective bargaining agreement, so the provision does not apply.

would be less than one and one-half times the day rate. *Brock,* 833 F.2d at 17. Thus, *Brock* supports a proposition on which both parties in this case already agree—that the shift differentials for the second and third shifts must be included in the calculation of the regular rate. *Brock,* 833 F.2d at 17. It does not appear, however, that the Plaintiffs in *Brock* requested a remedy similar to that requested by the Plaintiffs in this case. In fact, the *Brock* court stated only that the Secretary of Labor sought "an award of back wages for underpaid employees," in addition to liquidated damages and an injunction. *Id.* at 14.

Other cases cited by the Plaintiffs include *Howard v. City of Springfield,* 274 F.3d 1141, 1147 (7th Cir.2001) (holding that payments equal to one and one-half times the regular rate may be used to offset overtime liability); *Reich,* 57 F.3d at 578; *Hesseltine v. Goodyear Tire & Rubber Co.,* 391 F.Supp.2d 509, 522 (E.D.Tex. 2005) (noting that premium pay for holidays and weekends is creditable so long as it equals one and one half times the regular rate); and *Nolan v. City of Chicago,* 125 F.Supp.2d 324, 331 (N.D.Ill.2000) (same). All of these cases affirm that a premium rate must be one and one-half times the regular rate in order to be exempt from inclusion in the regular rate calculation, a proposition that is also supported by regulations promulgated under the FLSA. *See, e.g.,* 29 C.F.R. § 778.203 (2005) ("If the premium rate is less than time and one-half, the extra compensation provided by such rate must be included in determining the employee's regular rate of pay and cannot be credited toward statutory overtime due, unless it qualifies as an overtime premium under section 7(e)(5)."). None of the cases address the situation where the employer intended to pay time and one-half for sixth day work, but, due to an improperly calculated regular rate,

the sixth day premium fell short of that amount.

The Plaintiffs spend a substantial portion of their brief discussing the requirement in § 207(e)(6) that a sixth day premium payment may be excluded from the regular rate computation only if it is not less than one and one-half times "the rate established *in good faith* for like work performed in nonovertime hours on other days." 29 U.S.C. § 207(e)(6) (emphasis added). The Plaintiffs argue that the Defendant's regular rate can not have been established in good faith because it was too low, citing a federal regulation that states: "a rate which yields the employee less than time and one-half of the minimum rate prescribed by the Act would not be a rate established in good faith." 29 C.F.R. § 778.203(b). But the same regulation explains that the good faith language "is used for the purpose of distinguishing the bona fide employment standards contemplated by section 7(e)(6) from fictitious schemes and artificial or evasive devices as discussed in Subpart F of this part." *Id.* Subpart F, in turn, addresses schemes in which an employer artificially suppresses the hourly rate in order to lower the overtime compensation due, making up the low hourly rate to the employee by some other means, such as bonuses. The regulation goes on to describe additional prohibited schemes along these lines. *See* 29 C.F.R. § 778.500(b). Thus, the regulation indicates that the "good faith" language was intended to address circumstances somewhat different than the situation in this case.

WLF argues that the Plaintiffs' proposed remedy would grant them a windfall because they would receive the sixth day premium twice. The Court agrees. Under 29 U.S.C. § 216(b), "[a]ny employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable

to the employee or employees affected in the amount of their unpaid minimum wages, or their *unpaid* overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b) (emphasis added). This provision indicates that an employer who has violated the FLSA should make its employees whole by paying them what they would have been paid if the employer had not violated the statute. In contrast, as the Eighth Circuit has recognized, the liquidated damages provision in § 216(b) is meant to be punitive: "Section 216's provision for liquidated damages is intended in part to compensate employees for the delay in payment of wages owed under the FLSA; it is a penalty or a punishment." *Hultgren v. County of Lancaster,* 913 F.2d 498, 508–09 (8th Cir.1990) (citing *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 707, 65 S.Ct. 895, 89 L.Ed. 1296 (1945)).

If the Court were to grant the Plaintiffs' proposed remedy, the Plaintiffs would receive the full pay that they should have received in the first place, as set forth in the employee handbooks, in the form of sixth day premium pay including the full shift differential. They would also receive additional overtime pay and sixth day premium pay via a recalculated regular rate that would include the erroneously calculated sixth day premium. The Court cannot find anything in the statute to suggest that the compensatory damages provision in § 216 was intended to be so punitive. *See Lupien v. City of Marlborough,* 387 F.3d 83, 90 (1st Cir.2004) (observing that the FLSA's purpose is to make plaintiffs whole, not to grant them a windfall); *Roman v. Maietta Const., Inc.,* 147 F.3d 71, 77 (1st Cir.1998) (same). In fact, in an early case construing the FLSA, the Supreme Court cautioned against the inclusion of overtime premiums in the regular rate: "To permit overtime premium to enter into the computation of the regular rate would be to allow overtime premium on overtime premium—a pyramiding that Congress could not have intended." *Bay Ridge Operating Co.,* 334 U.S. at 464, 68 S.Ct. 1186. For the reasons discussed above, the Court concludes that the sixth day premium payments that WLF has already made should not be included in any recalculation of the regular rate. In addition, the Court concludes that WLF should receive credit towards its overtime deficiencies for the sixth day premium payments that it has already paid to the Plaintiffs under § 207(h).[6] *See Kohlheim v. Glynn County,* 915 F.2d 1473, 1481 (11th Cir.1990) (holding that the employer could offset all previously paid overtime premiums, not just those equal to one and one-half times the regular rate).

### D. *Is WLF Entitled to Credit for "Triple Time" Payments it Accidentally Paid to Employees?*

■ WLF contends that it is entitled to receive overtime credit for "triple time" payments it accidentally made to employees at the Mount Pleasant plant in 2003. The overpayments were the result of an error in WLF's computerized timekeeping system. Section 207(h)(1) makes clear that the only payments that are creditable towards overtime compensation are the types of payments listed in § 207(e)(5)-(7). The erroneous payments made in 2003 do not fall under any of these categories. Moreover, the employees who received the extra payments did not anticipate them, and likewise could not have anticipated that their overtime payments would be

---

**6.** WLF is also entitled to credit for seventh day premium payments it made. The seventh day premium payments were in the form of double time and therefore qualify for credit under §§ 207(e)(6) and (h).

reduced at a later date due to the erroneous payments. For these reasons, the Court concludes that the accidental triple time payments may not be used to offset WLF's overtime deficiencies.

### E. Should WLF's Overtime Credits be Applied Cumulatively or Within a Single Pay Period?

■ The final disputed issue in the Plaintiffs' Motion for Partial Summary Judgment is whether WLF's overtime credits should be applied cumulatively, or within a single pay period. The Plaintiffs argue that premium credits allowed pursuant to § 207(h)(2) should be applied only within a single pay period, while WLF argues that it should receive credit across pay periods to offset its total liability. Courts that have addressed this issue are divided. Courts holding that credit is only available within a single pay period focus on the fact that overtime payments are generally due at the end of a pay period, or as soon after the end of a pay period as is practicable. See Herman v. Fabri–Centers of Am., Inc., 308 F.3d 580, 590 (6th Cir.2002) (noting that the FLSA requires that overtime payments be timely made); Howard, 274 F.3d at 1148–49 (observing that applying credits cumulatively would allow employers to manipulate overtime payments to suit their economic concerns); Roland Elec. Co. v. Black, 163 F.2d 417, 420 (4th Cir.1947); Nolan, 125 F.Supp.2d at 332; see also 29 C.F.R. § 778.106 ("The general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends."); 29 C.F.R. § 778.202(c) (employer may credit excess payment "against the overtime compensation which is due under the statute for hours in excess of 40 *in that workweek* ") (emphasis added).

On the other hand, courts holding that credits may be applied cumulatively generally do so on the basis that limiting credits to a pay period would grant the plaintiffs a windfall. See Singer v. City of Waco, 324 F.3d 813, 826 (5th Cir.2003); Alexander v. U.S., 32 F.3d 1571, 1576–77 (Fed.Cir.1994); Kohlheim, 915 F.2d at 1481; Abbey v. City of Jackson, 883 F.Supp. 181, 184–87 (E.D.Mich.1995) (finding that regulations are ambiguous as to proper offset method, but noting that congressional intent to allow offsets is clear), overruled by Herman, 308 F.3d at 590.

After careful consideration, this Court agrees with the courts that have held that credit may only be applied within a pay period. As the Seventh Circuit reasoned in Howard, the purpose of the FLSA is "to protect workers from the twin evils of excessive work hours and substandard wages." Howard, 274 F.3d at 1148. Moreover, an employer who makes payments late has violated the FLSA. Id. (citing Barrentine, 450 U.S. at 739, 101 S.Ct. 1437). By failing to include the shift differential in the regular rate for purposes of calculating overtime, WLF deprived workers of payments that were due to them at the end of each pay period. For this reason, it is appropriate that WLF only receive credits within a single pay period.

### VI. CONCLUSION

For the reasons discussed above, the Court concludes that: (1) WLF is not entitled to credit for sixth day premium payments under 29 U.S.C. §§ 207(e)(5) and (h); (2) The sixth day premium payments that WLF has already made should not be recalculated back into the regular rate; (3) WLF is entitled to credit for sixth day premium payments it has already made under 29 U.S.C. §§ 207(e)(6) and (h); (4) WLF is not entitled to any credit for "tri-

ple time" payments it accidentally made to employees; and (5) overtime credits must be calculated on a pay period by pay period basis. Plaintiff's Motion For Partial Summary Judgment (Clerk's 67), therefore, is granted in part and denied in part.

IT IS SO ORDERED.